(No. 22567.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES COHN, Plaintiff in Error.

*Opinion filed October 22, 1934—Rehearing denied Dec. 13, 1934.*

JOSEPH LUSTFIELD, and ODE L. RANKIN, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURT-NEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, J. ALBERT WOLL, and HENRY E. SEYFARTH, of counsel,) for the People.

Mr. CHIEF JUSTICE JONES delivered the opinion of the court:

James Cohn was indicted in the criminal court of Cook county for conspiracy. The first count charged a conspiracy to obtain money by the confidence game. The second count charged defendant with unlawfully confederating and agreeing with Marie Gamble, and other persons to the grand jurors unknown, to obtain money by false pretenses from Mary Cohn, Mary Daly, Jerry Sullivan, Mary Farrell and other unknown persons who had taken or were about to take examinations for and desired to be appointed to civil service positions in the city of Chicago, the exact amount of money being unknown to the grand jurors. The first count was dismissed by the prosecution. A jury trial was had on the second count. Defendant was convicted and sentenced to imprisonment in the county jail for thirty days and to pay a fine of $2000. The judgment was af-

firmed by the Appellate Court for the First District, and the cause is here on writ of error sued out by defendant.

In the presence of the jury Marie Gamble was granted immunity from any prosecution that could arise from her testimony and she became a witness for the People. She was employed in the office of the corporation counsel and first met defendant in 1928 at a political campaign headquarters in Chicago. She afterwards saw him from time to time. According to her testimony Cohn asked her if she knew anyone who had taken a civil service examination, and if she did she should let him know. They had further conversations about the matter. Each time she saw him he asked her about it. He told her he had an "in" with the Civil Service Commission whereby he could get positions and they could make some money out of it. He afterwards named the amounts required to obtain various positions. She knew of no one about to apply for a civil service position, but in about two weeks received a telephone call from a friend, Mrs. Nellie Bolton, who asked if she knew anyone who could help her to obtain such positions. Mrs. Gamble told Cohn of the conversation and asked him if the transaction was legitimate. He assured her it was. She told him she did not want to get into any trouble and would call Mrs. Bolton and tell her so. He said, "Don't be a child; it is done every day." She asked him if he was sure about it, and he told her "positively." He said that whatever amount she could get would be all right. She went to Mrs. Bolton's house, where she met Mary Farrell, who desired to obtain a position as bridge tender for her husband. Later, at different times, she met several others there who were seeking civil service positions. She took money from each of them and turned it over to Cohn, receiving a portion of each payment as her share. He told her he did not want any checks. From Mary Farrell she collected $350, out of which she received $150. From Jerry Sullivan she obtained $600 for a posi-

tion as bridge tender, her share being $150. From Mrs. Daly, for a position of school engineer for her son, she collected $300, receiving $50 as her share. She met each of them but once. The meetings were arranged by Mrs. Bolton and the parties came to her house prepared to make their payments. Mrs. Gamble gave a receipt to each person from whom she collected money. The one given Mrs. Daly was prepared by Mrs. Bolton. Mary Cohn had taken the civil service examination for the position of junior clerk. From her Mrs. Gamble received $150, turned it over to Cohn and received $50. The receipt she gave Mary Cohn recited that the money was "for a Jr. clerk job, city hall, through James Cohn." Emma Martini was connected with the department of public welfare of the city and desired civil service appointments for two of her friends. Mrs. Gamble collected from one of them (Carlson) $150 for a position as fireman in a school. From the other (Mrs. Brown) she collected $150 for a position as bus attendant. These amounts were turned over to Cohn and Mrs. Gamble received in each case $50. Every time she took money to him or talked to him about civil service examinations she asked him if the transaction was legitimate. He repeatedly assured her it was. She stated that she did not think it was wrong or she would not have done it. Her testimony as to the payments made to her is corroborated by the witnesses Jerry Sullivan, James Farrell, Gerald Daly, Mary Farrell, Mary Daly, Mary Cohn and Emma Martini.

When none of the names of the persons from whom Mrs. Gamble received such payments appeared in the published list of civil service appointeees some of them complained to her about it and she asked Cohn why the names were not published. He told her it was not necessary, and with the "in" he had it would be all right and he would get the positions. Mrs. Farrell threatened to have Mrs. Gamble taken to the State's attorney's office. She told Cohn about

it. He told her she need not fear, as they were as guilty as she. He promised to return Mrs. Farrell's money but did not do so. She had several appointments with him about returning the money, but he did not keep them. After she was threatened she sought advice and went to Mrs. Martini about it. Mrs. Martini went with her to the State's attorney's office and Cohn was arrested.

Mrs. Martini was a candidate for president of the county board. She testified that she talked with Cohn and Mrs. Gamble about every day at lunch for four or five days—more about her campaign than about the jobs. Two or three weeks before Cohn was arrested she talked with him and Mrs. Gamble about the positions for her two friends. She asked him what he was going to do about the bus attendant position. He told her he had a friend in the civil service and that it would be only a matter of a few days and the position would be filled. He named the person who was ultimately to get the money. She did not know at that time that Cohn was the party with whom Mrs. Gamble was dealing. Mrs. Gamble also testified that Cohn told Mrs. Martini through whom he would get the positions. The testimony shows that the person named held no official position with the city of Chicago but was a member of the county board of Cook county and officially connected with Calumet City.

Mary Cohn testified that she met the defendant through Mrs. Gamble, who told her he would see that she got through, and if she was not successful he would return the money. Mrs. Gamble applied for a position as food inspector and permitted Mary Cohn to represent herself as Mrs. Gamble and to take the examination for her. Mrs. Gamble testified that she was ill at the time and the substitution was at defendant's suggestion.

Defendant is a graduate civil engineer of Cornell University. He had been assistant product manager of the United States navy department for three months and had

worked for the city of Chicago. Before that he was out of employment for a long time. His employment with the city ended about one month before his arrest. At the time of the trial he was connected with a corporation handling valuation engineering. He testified that he knew Mrs. Gamble, Mary Cohn and Mrs. Martini but denied in detail the testimony of the witnesses for the prosecution.

At least two parties with a common criminal intent are necessary to a conspiracy, and it is urged that the testimony for the People shows that Mrs. Gamble entertained no criminal intent and therefore the charge must fall as to Cohn. The rule is, that where there are but two parties to a conspiracy an acquittal of one of them requires the discharge of the other. (*People* v. *LaBow*, 282 Ill. 227.) That rule does not operate in this case. Mrs. Gamble was not acquitted of the charge. She was not on trial. The facts to which she testified were sufficient to establish not only the guilt of Cohn but her own as well. As in other offenses, a criminal intent is a necessary element of the crime of conspiracy. (5 R. C. L. "Conspiracy," sec. 6.) A guilty intention may be inferred from a criminal act. The intent is generally inferable whenever the means used are such as would ordinarily result in the commission of the forbidden act. The question is one of fact for a jury. (8 R. C. L. "Criminal Law," sec. 11.) Everyone is presumed to know the law—both common and statutory. An honest mistake of fact will generally shield one from a criminal prosecution, but one's ignorance of the law furnishes no exemption from criminal responsibility for his acts. Mrs. Gamble's uneasiness about the legality of the transaction, shown by her repeated inquiries of Cohn, demonstrates that there was continuously in her mind a feeling that her conduct was criminal. Her mere statements that she did not know it was unlawful would not operate to exonerate her from criminal responsibility. The fact that the statements were made while she was a witness for the

State gives them no more potency than if they had been made in defense of a prosecution against her. Being insufficient to exonerate her they do not operate to discharge Cohn. Her testimony convinces us that she was a willing participant in the unlawful scheme to obtain money from her victims and was all the while fearful of punishment. Nor does the testimony show there were only two parties to the conspiracy. On the contrary, it shows that one of the unknown conspirators was Mrs. Bolton. She participated in the matter from its inception and arranged the meetings between Mrs. Gamble and several people. She informed them of the prices they must pay, and they came to her home prepared to pay the amounts demanded. She wrote one of the receipts. It was not necessary that she should be acquainted with all the others engaged in the conspiracy. The doing of some act or the making of some agreement showing her intent to be a participant· was sufficient. 5 R. C. L. "Conspiracy," sec. 3.

It is further contended that the facts shown by the prosecution do not furnish the essential elements of a conspiracy to obtain money by false pretenses; that there is no showing of an agreement to use false pretenses or to represent a false condition or to falsely represent an existing or past fact. This argument is based on the contention that there is no evidence of concerted action by the parties and that Cohn performed no overt act. The essence of a conspiracy is not the accomplishment of the unlawful design but it is the unlawful confederation or agreement to accomplish the criminal or unlawful purpose. It is not necessary to prove any overt act under the agreement, or that the conspirators agreed, in terms, to pursue the common design. It is only necessary to show that they, either by acting together or separately, pursued a course tending to accomplish such common, unlawful design. The conspiracy may be proved by direct evidence, by the conduct of the parties, by statements, documents or facts and

circumstances which disclose a common design to act together in pursuance of a common criminal purpose. (*People* v. *Drury*, 335 Ill. 539; *People* v. *Walczak*, 315 id. 49.) Any false representation of an existing fact or condition by which the property of another is obtained is a false pretense under the law defining that crime. (*People* v. *Drury*, *supra.*) The record shows defendant falsely represented an existing fact—*i. e.*, that he had the ability, by means of an "in," to secure civil service positions and would do so for a consideration. The proof is that these pretenses were knowingly false; that he made no effort to obtain a position for anyone, and that he never intended to do so. It also shows that Mrs. Gamble was fully cognizant of that falsity. The representation was not as to the future but of his then present ability. The unlawful common design was to secure money by means of that representation. Each of the conspirators performed his part of the common design. In contemplation of law, any act done by one of them in furtherance of that design was the act of all, and they are all equally guilty of the crime. *People* v. *Walczak*, *supra; White* v. *People*, 139 Ill. 143; *Ochs* v. *People*, 124 id. 399.

The contention that there is a variance because the indictment charged a conspiracy to defraud certain persons and the evidence showed a conspiracy to defraud the public generally cannot be upheld. The indictment alleged a conspiracy to defraud certain named persons and other persons unknown to the grand jury, and the proof corresponds with the allegation.

It is urged that defendant's conviction rested wholly upon the uncorroborated testimony of Marie Gamble, who was granted immunity, and that the evidence does not show his guilt beyond a reasonable doubt. Mrs. Gamble's testimony as to defendant's connection with the transaction was corroborated by Mrs. Martini. In all other essential details it was corroborated by documents and several witnesses.

The jury saw and heard the witnesses. The trial judge approved the verdict, the judgment has been affirmed by the Appellate Court, and we perceive no reason for reversing it. The judgment of the Appellate Court is therefore affirmed.

*Judgment affirmed.*