**People of the State of Illinois, Defendant in Error, v. Frank Sarelli, Plaintiff in Error.**

Gen. No. 48,487.

First District, Third Division.

February 21, 1962.

Julius Lucius Echeles, of Chicago, for plaintiff in error.

Daniel P. Ward, State's Attorney, Cook County (John T. Gallagher and Dean H. Bilton, Assistant State's Attorneys, of counsel), for defendant in error.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

Frank Sarelli, a defendant in this action, was indicted together with three others for conspiracy to cause an abortion on the person of a named woman, the indictment charging that such operation was not necessary to preserve her life. Sarelli and one Castellano were tried together by the court without a jury in the Criminal Court of Cook County. The trial court found the defendants guilty. Castellano was fined $500, and Sarelli was fined $1,000 and sentenced to six months in the county jail. To review his conviction Sarelli sued out a writ of error in this court.

As grounds for reversal Sarelli urges that there was no proof appearing in the record that the abortion was not necessary to save the life of the com-

plaining witness and that there is insufficient evidence to sustain the finding of the trial court.

The evidence in the record shows that a woman, nineteen years old at the time of the trial (hereafter referred to as the complaining witness), was pregnant. She went to her family physician, later a witness at the trial, who examined her and told her that in his opinion she was pregnant. She then talked to Castellano, who was responsible for her condition, and he refused to marry her. They then discussed the possibility of getting rid of the baby. She was undecided as to whether she would or not. Castellano gave her some pills intended to produce an abortion. On November 11, 1959 Castellano called the complaining witness on the telephone and told her that arrangements for the abortion were all taken care of, that he would pick her up after work, and that she should call her home and tell her mother she and Castellano were going out for dinner. On that date Castellano and an unidentified man picked her up after work and drove to approximately 7000 South Indiana Avenue in Chicago. They told her that they were taking her to a doctor, that they had to be there on time, and that the doctor knew what he was doing since he had done it before. Castellano and the stranger got out of the car and crossed the street to talk to Sarelli, who was sitting in a parked car. Castellano and his companion returned to the car and with the complaining witness drove away following the other car for a few blocks. Castellano, the complaining witness and the unidentified man got out of their car and joined Sarelli, who was in the other vehicle. Sarelli told the complaining witness that she did not have to worry about anything. She then got in the car with him and he drove to an apartment building near 7500 South Indiana Avenue. Castellano and the unidentified man followed in the other car. The complaining witness described the building and further testified that when she went

382

to the apartment in the basement of the building with Sarelli a woman let them in and Sarelli asked whether "Dr. Jim" was in. The witness identified the woman as Gwendolyn Stevens and stated she had seen her since. (Stevens was another defendant indicted for conspiracy, but she was not tried with Sarelli and Castellano.)

Sarelli and the complaining witness waited until a Dr. James Lyle came in. They introduced her to him and he went into the bedroom, put some white paper on the bed, and called the complaining witness into the bedroom. She started to cry, the doctor walked out, and Castellano entered and told her not to worry about it and said that both of them had to think of their parents. The doctor then gave her a sedative and she started to get drowsy. She removed her clothing and laid down on the bed. Castellano had told her she had to go through with it. The doctor inserted a speculum into the vagina of the complaining witness. Castellano was present. The witness felt something sharp inside of her like a knife. The witness was screaming and the doctor said he could not go on because he had "nosy neighbors." Sarelli then came into the room and in the presence of Castellano and the doctor told the witness that she had to go through with it. The doctor then said that they should come back the next day and he would finish it. The witness then got dressed. The doctor gave her some pills to relieve her pain and the witness went home.

When she arrived home she was bleeding from the vagina and approximately two hours later she was taken to the hospital. Dr. Draa testified that he examined her and concluded that she was three months pregnant and it appeared likely that she would lose the baby. On November 13, 1959 she suffered a miscarriage and on November 14th Dr. Draa and Dr. Laranagus performed a curettement upon her.

Sarelli urges that the conviction must be reversed in that the record fails to show that the abortion was not performed in order to save the life of the complaining witness and that the evidence was insufficient to show that Sarelli was a party to a conspiracy to perform an illegal abortion.

There is no question that in order to prove the crime of abortion the State has the burden of proving it was not performed for the purpose of saving the mother's life. People v. Davis, 362 Ill 417, 200 NE 334 (1936); People v. Hobbs, 297 Ill 399, 130 NE 779 (1921); Beasley v. People, 89 Ill 571 (1878). Sarelli argues that unless the State has proved that the attempted abortion was not necessary for the preservation of the complaining witness' life he could not be convicted of conspiracy. Sarelli was not indicted either for the commission of an illegal abortion or for an attempt. He was indicted for conspiracy to commit an illegal abortion. An illegal abortion under the statute is an abortion done for any other purpose than that of saving the mother's life.

In People v. Bain, 359 Ill 455, 195 NE 42 (1935), the court says: "Conspiracy is generally defined as a confederacy of two or more persons to accomplish some unlawful purpose or a lawful purpose by some unlawful means. (2 Bishop on Crim Law, (9th ed) sec 175; People v. Bain, 358 Ill 177, 193 NE 137.)" In People v. Nathanson, 389 Ill 311, 59 NE2d 677 (1945), the defendant contended that there was no proof that the abortions were necessary for the preservation of life, and the court says:

"The evidence is quite sufficient to establish agreement and concert of action in operations which, in themselves, were for an illegal purpose. It is not necessary that the object of the conspiracy be accomplished. (Ochs v. People, 124 Ill 399; People v. Lloyd, 304 Ill 23.) If there was a common

384

design, under these authorities, it would not be necessary to prove a condition existed which would enable the conspirators to commit an abortion. The gist of conspiracy is the illegal agreement, and it was for the jury to determine from the circumstances proved whether an agreement between plaintiff in error and unknown persons had been proved beyond a reasonable doubt. Here, in each instance, the proof showed that the witnesses were in good health and suffered from no other ailment or illness other than the missing of their menstrual periods and nausea. Under the circumstances, we believe the proof sufficient to comply with the allegations of the indictment that such abortions, if completed, were unnecessary for the preservation of life."

The court further holds that it is not necessary for the State to show that the woman involved was pregnant.

In People v. Cohn, 358 Ill 326, 193 NE 150 (1934), the court says: "The essence of a conspiracy is not the accomplishment of the unlawful design but it is the unlawful confederation or agreement to accomplish the criminal or unlawful purpose."

■ Sarelli urges that there was insufficient evidence in the record to prove that he entered into a conspiracy to have a criminal abortion performed upon the complaining witness. In Bergeson v. Mullinix, 399 Ill 470, 475, 78 NE2d 297, 300 (1948), the court says:

"A common design is the essence of the charge, and if it be proved that the defendants pursued by their acts the same object, by the same means, one performing one part and one another, a conspiracy may be inferred if the evidence is sufficient. (Ochs v. People, 124 Ill 399.)"

Sarelli relies upon People v. Solomen, 261 Ill App 585 (1931). This opinion merely held that where the

court instructs a jury that a conspiracy may be proved by circumstantial evidence alone, it was improper for the court to refuse to instruct the jury further that where conviction is sought on circumstantial evidence alone the facts proved should exclude every reasonable hypothesis of innocence. In People v. Ahrling, 279 Ill 70, 116 NE 764 (1917), the court says:

> "The conviction is asked in this case on circumstantial evidence, alone. The undoubted rule in such case is, that before a conviction can properly be had upon purely circumstantial evidence the guilt of the accused must be so thoroughly established as to exclude every reasonable hypothesis of his innocence. (Mooney v. People, 111 Ill 388; Purdy v. People, 140 id. 46.)"

See also People v. Kiley, 261 Ill App 346 (1931). In People v. Borrelli, 392 Ill 481, 493, 64 NE2d 719, 724 (1946), the court says:

> "The existence of a conspiracy may be proved not only by direct evidence but also by inference from conduct, statements, facts and circumstances which disclose a common design on the part of the accused and others to act in pursuance of a common criminal purpose. People v. Link, 365 Ill 266; People v. Stavrakas, 335 Ill 570."

See also People v. Cohn, supra; People v. Rudnicki, 394 Ill 351, 68 NE2d 723 (1946). The use of circumstantial evidence in proving a conspiracy is necessary because it would be a rare case in which the defendant might admit at the trial that he possessed the requisite criminal intent. The courts are therefore compelled to determine the defendant's state of mind from the surrounding facts and circumstances. In the Nathanson case, supra, the court says:

> "The circumstances surrounding the arrest of the plaintiff in error certainly are not consistent

with his innocence. Had the plaintiff in error and his assistants been performing legal operations, there would have been no necessity for them to hide from the police nor to make efforts to hide their actions from official scrutiny."

The evidence in the instant case is stronger than that in the Nathanson case. In the instant case the abortion was attempted in a basement apartment in the evening. A bed was substituted for the operating table. On a piece of paper on the dresser the doctor laid out his surgical instruments. The woman was given a sedative and the doctor commenced to operate on her. When she screamed, he desisted, stating that he had "nosy neighbors." The evidence proves beyond a reasonable doubt that a criminal abortion was at least attempted. In People v. Rudnicki, supra, the court says:

> "This court will not disturb a verdict of guilty on the ground that the evidence is not sufficient to convict unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to justify us in entertaining a reasonable doubt of the defendant's guilt."

The evidence in the record as to what Sarelli did and said from the time he met the complaining witness until they left the apartment occupied by the doctor is sufficient to establish beyond a reasonable doubt that Sarelli was a party to a conspiracy to commit a criminal abortion upon the complaining witness. To hold otherwise would be an affront to reason.

The judgment of the Criminal Court of Cook County is affirmed.

Affirmed.

DEMPSEY and SCHWARTZ, JJ., concur.