# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People v. Gay, 2011 IL App (4th) 100009**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANTHONY GAY, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-10-0009 |
| Filed | November 18, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court properly dismissed defendant inmate's amended postconviction petition alleging that his aggregate sentence for multiple aggravated battery convictions, including the instant offense, arising from his conduct toward corrections officers, violated the prohibition against cruel and unusual punishment, that his right to a speedy trial was violated by the State's tactical preindictment delay, that his counsel was ineffective in failing to argue that his speedy-trial request was circumvented by the fitness examination the trial court erroneously ordered, and that the Department of Corrections citation issued to defendant for his conduct that gave rise to the instant conviction insufficiently advised him that the same conduct exposed him to criminal prosecution. |
| Decision Under Review | Appeal from the Circuit Court of Livingston County, No. 03-CF-172; the Hon. Robert M. Travers, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Michael J. Pelletier, of State Appellate Defender's Office, of Springfield, and Alan D. Goldberg and Scott F. Main (argued), both of State Appellate Defender's Office, of Chicago, for appellant.

Thomas J. Brown, State's Attorney, of Pontiac (Patrick Delfino, Robert J. Biderman, and Linda Susan McClain (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Harold C. Hirshman and Camille E. Bennett, both of SNR Denton US, LLP, and Alan Mills, of Uptown People's Law Center, both of Chicago, for *amici curiae*.

Panel

JUSTICE COOK delivered the judgment of the court, with opinion.

Presiding Justice Knecht and Justice McCullough concurred in the judgment and opinion.

**OPINION**

¶ 1    In December 2009, the trial court dismissed defendant Anthony Gay's amended postconviction petition following a second-stage nonevidentiary hearing, finding defendant failed to make a substantial showing that his constitutional rights were violated. Defendant appeals, arguing he made substantial showings that (1) his aggregate sentence in this and other unconsolidated cases violates the constitutional prohibition against cruel and unusual punishments; (2) the State subverted his constitutional rights to due process and a speedy trial by engaging in tactical preindictment delay; (3) he received ineffective assistance of counsel when his counsel on direct appeal did not argue the court erred by ordering a fitness examination and thereby circumvented defendant's speedy-trial request; and (4) the Department of Corrections (DOC) citation issued to defendant for his conduct that gave rise to this aggravated-battery conviction insufficiently advised him that the same conduct also exposed him to possible criminal prosecution. We disagree with defendant and affirm.

¶ 2                              I. BACKGROUND

¶ 3    On August 25, 2000, while an inmate at Pontiac Correctional Center, defendant threw a liquid substance having a urine-like odor at a corrections officer, striking him in the face with it. DOC cited defendant for a violation of offense No. 102, "ASSAULTING ANY PERSON." See 20 Ill. Adm. Code 504 app. A (2011) (enumerating and defining DOC offenses). On July 1, 2003, for the same incident, the State charged defendant with

-2-

aggravated battery in this case, Livingston County case No. 03-CF-172 (case No. 172). 720 ILCS 5/12-4(b)(6) (West 2000). At that time, criminal charges were pending against defendant in five other Livingston County cases. After an August 30, 2005, trial, a jury found defendant guilty as charged. On October 28, 2005, the trial court sentenced defendant to an extended term of six years' imprisonment. See 730 ILCS 5/5-5-3.2(b)(1), 5-8-2(a)(5) (West 2004). This sentence was to run consecutively to sentences defendant had received in other cases. See 730 ILCS 5/5-8-4(f) (West 2004). This court affirmed on direct appeal. *People v. Gay*, 376 Ill. App. 3d 796, 803, 878 N.E.2d 805, 811 (2007).

¶ 4 On July 19, 2007, defendant filed a postconviction petition in this case pursuant to the Post-Conviction Hearing Act (725 ILCS 5/122-1 through 122-8 (West 2006)). By that time, defendant had accumulated 16 aggravated-battery convictions, including his conviction in case No. 172, stemming from defendant's behavior toward corrections employees in Pontiac from 2000 to 2001. His convictions had resulted in 97 years of consecutive sentences. Defendant waived the appointment of postconviction counsel. See 725 ILCS 5/122-4 (West 2006). On June 24, 2008, according to the trial court's docket sheet, defendant was given leave to file amended postconviction petitions in this and other cases. The court noted, "The defendant is admonished to list case numbers on all of his pleadings."

¶ 5 On December 26, 2008, defendant filed his amended postconviction petition in this case. No other case number was indicated in the caption of defendant's petition. Four of defendant's claims of constitutional violations are relevant to this appeal, and the lengthy and detailed factual assertions related to these claims will be discussed as necessary in our analysis.

¶ 6 The State was granted a series of continuances to file an answer or motion to dismiss. See 725 ILCS 5/122-5 (West 2006). The deadline for filing passed. On October 13, 2009, the trial court held a second-stage hearing on defendant's amended postconviction petition. The court denied the State's motion to file its motion to dismiss *instanter* but allowed the State to enter a general denial. It heard arguments and took the matter under advisement.

¶ 7 In a December 10, 2009, written order, the trial court dismissed defendant's amended petition, finding he made no substantial showing of a constitutional violation.

¶ 8 This appeal followed.

¶ 9 II. ANALYSIS

¶ 10 A. Standard of Review

¶ 11 We review the trial court's dismissal of a postconviction petition without an evidentiary hearing *de novo*. *People v. Hall*, 217 Ill. 2d 324, 334, 841 N.E.2d 913, 920 (2005). Dismissal is warranted at the second stage where the defendant's claims, liberally construed in light of the trial record, fail to make a substantial showing of a constitutional violation. *Id.* At that stage, the defendant's factual allegations not rebutted by the trial record are taken as true. *Id.*

¶ 12 B. Cruel and Unusual Punishment

¶ 13 First, defendant argues that he made a substantial showing that his aggregated sentence

from this and 15 other unconsolidated criminal cases amounts to cruel and unusual punishment. We disagree.

¶ 14    The eighth amendment to the United States Constitution states, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const., amend. VIII. The cruel and unusual punishments clause has been interpreted to embody two distinct propositions. One "prohibits the imposition of inherently barbaric punishments under all circumstances." *Graham v. Florida*, 560 U.S. ___, ___, 130 S. Ct. 2011, 2021 (2010). The other embodies a "narrow proportionality principle," which "forbids *** extreme sentences that are grossly disproportionate to the crime." (Internal quotation marks omitted.) *Graham*, 560 U.S. at ___, 130 S. Ct. at 2021.

¶ 15    Cases challenging the proportionality of a sentence to the crime committed were, until *Graham* was decided in 2010, divided into two discrete categories: those involving a term-of-years sentence and those involving the death penalty. *Graham*, 560 U.S. at ___, 130 S. Ct. at 2021. In cases challenging a term-of-years sentence, a court would initially engage in a case-by-case proportionality evaluation comparing the "gravity of the offense" to the "severity of the sentence." *Graham*, 560 U.S. at ___, 130 S. Ct. at 2022. If the sentence was grossly disproportionate, the court would compare the sentence to "the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." *Graham*, 560 U.S. at ___, 130 S. Ct. at 2022. If the latter comparison confirmed that the sentence was grossly disproportionate to the offense, the sentence would be found cruel and unusual. *Graham*, 560 U.S. at ___, 130 S. Ct. at 2022.

¶ 16    In cases challenging a capital sentence, the death penalty was found categorically cruel and unusual in certain instances based upon either "the nature of the offense" or "the characteristics of the offender." *Graham*, 560 U.S. at ___, 130 S. Ct. at 2022. The Supreme Court has held that capital punishment is impermissible when imposed for nonhomicide crimes or imposed against juvenile offenders or those "whose intellectual functioning is in a low range." *Graham*, 560 U.S. at ___, 130 S. Ct. at 2022.

¶ 17    The differential treatment of capital and term-of-years sentences before *Graham* reflected the Supreme Court's "longstanding view that the death penalty is different from other punishments in kind rather than degree." (Internal quotation marks omitted.) *Graham*, 560 U.S. at ___, 130 S. Ct. at 2038-39 (Roberts, C.J., concurring). Earlier in the opinion, however, the Court stated, "[L]ife without parole sentences share some characteristics with death sentences that are shared by no other sentences." *Graham*, 560 U.S. at ___, 130 S. Ct. at 2027.

¶ 18    In *Graham*, 560 U.S. at ___, 130 S. Ct. at 2034, for the first time, the Supreme Court recognized a categorical limitation on a term-of-years sentence, holding that life without parole sentences were necessarily unconstitutional when imposed upon juvenile, nonhomicide offenders. The Court based its decision on its intermediate conclusions that (1) United States jurisdictions had developed a consensus against authorizing and imposing life without parole sentences for juvenile, nonhomicide offenders; (2) juvenile, nonhomicide offenders were generally less culpable than adult and homicide offenders; (3) "the challenged sentencing practice" served no "legitimate penological goals," such as retribution, deterrence,

-4-

incapacitation, and rehabilitation; (4) a categorical prohibition was preferable to a ruling restricted to the facts of the case; and (5) "the global consensus against the sentencing practice in question" confirmed the Court's determination that it was categorically unconstitutional. *Graham*, 560 U.S. at ___, 130 S. Ct. at 2033. It concluded, "A State need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that term." *Graham*, 560 U.S. at ___, 130 S. Ct. at 2034.

¶ 19    Relying on *Graham*, defendant in this case contends his aggregated, 97-year sentence on his 16 felony convictions–which he characterizes as a *de facto* life without parole sentence–is cruel and unusual because defendant, as a sufferer of a mental illness, belongs to a class of categorically less culpable persons to whom the penological justifications for such sentences do not apply. In his postconviction petition, he requests that the trial court "exercise its supervisory authority and reduce the defendant's conviction in this case [No.] 03-CF-172 to reckless conduct [(720 ILCS 5/12-5(a) (West 2000)) (a Class A misdemeanor)] and order a new sentencing hearing."

¶ 20    Because we refute defendant's premise that his 97-year aggregated sentence amounts to a *de facto* life without parole sentence, we conclude defendant's argument is unpersuasive. Initially, we agree with the State that defendant's claim exceeds the scope of the postconviction proceedings in case No. 172. Postconviction proceedings are initiated by the filing of a petition. 725 ILCS 5/122-1(b) (West 2006). The petition is required to identify, *inter alia*, "the proceeding in which the petitioner was convicted." 725 ILCS 5/122-2 (West 2006). In turn, "[i]f the court finds in favor of the petitioner, it shall enter an appropriate order with respect to the judgment or sentence in the former proceedings." 725 ILCS 5/122-6 (West 2006). While no Illinois court of review has explicitly interpreted the clause, "in the former proceedings," in section 122-6, an ordinary reading suggests that the relief available in postconviction proceedings is defined by and constrained to the proceedings identified in the petition.

¶ 21    In this case, defendant filed his amended postconviction petition in case No. 172. The proper scope of his petition is, thus, limited to alleged constitutional violations occurring in the proceedings in case No. 172. However, defendant does not allege his sentence in case No. 172 is itself grossly disproportionate to the aggravated battery he committed. Instead, defendant alleges his sentence in case No. 172 contributed to a constitutional violation by, along with other sentences not before the trial court in these postconviction proceedings, adding up to a *de facto* life without parole sentence which, he claims, is cruel and unusual. However, defendant's claims regarding other cases could not be addressed by the trial court in the postconviction proceedings in this case.

¶ 22    Moreover, defendant's claim lacks merit as it relies on a mischaracterization of defendant's aggregated sentence as a life without parole sentence. Defendant cites only one case in which consecutive sentences on multiple convictions, when aggregated, were found to violate the categorical eighth-amendment prohibition on life without parole sentences for a class of offenders or offenses. *People v. De Jesus Nunez*, 125 Cal. Rptr. 3d 616 (Cal. Ct. App. 2011), *appeal pending sub nom. People v. Nunez*, 255 P.3d 951 (Cal. 2011). Pursuant to California Court Rule 8.1105(e)(1), however, the California Supreme Court's granting

review in *De Jesus Nunez* revoked its published status. Consequently, under California Court Rule 8.1115(a), *De Jesus Nunez* can no longer be cited as precedent. Illinois Supreme Court Rule 23(e) (eff. July 1, 2011) similarly limits the citation of nonprecedential, unpublished cases before courts in this State. Defendant thus lacks case law support for his proposition that an aggregated sentence resulting from multiple convictions may be considered a life without parole sentence.

¶ 23 Further, defendant's position is untenable in light of the stark qualitative difference between the death penalty and a life without parole sentence, on one hand, and all other sentences, on the other. *Graham*, 560 U.S. at ___, 130 S. Ct. at 2027. That is, as the second most severe penalty allowed in any United States jurisdiction, and now the most severe in Illinois (see Pub. Act 96-1543 (eff. July 1, 2011) (amending 725 ILCS 5/119-1 (West 2010)) (abolishing the death penalty)), life without parole is reserved for only serious offenders and offenses–those who, by their extreme recidivism or their culpability in a single act, signal to the sentencing court that they deserve never to be released from prison. Not an accumulation of sentences, a life without parole sentence is tied to a single conviction and is absolute in its duration for the offender's natural life. Even a lengthy sentence for a specific term of years is treated differently from life without parole.

¶ 24 Necessary to defendant's claim is his unstated premise that, after he had accumulated some unspecified duration of consecutive prison sentences, the Constitution prohibited the State from punishing any further crimes defendant committed. After how many convictions and sentences was defendant serving, effectively, a life without parole sentence? Defendant appears to rely on a commonsense demographic estimation of his life expectancy. He cites no authority for doing so, nor does he propose a workable standard. Was that boundary reached before defendant's conviction in this case? How was the sentencing court to know?

¶ 25 Defendant is mistaken. The eighth amendment allows the State to punish a criminal for each crime he commits, regardless of the number of convictions or the duration of sentences he has already accrued. Defendant's characterization of his aggregated sentence as a *de facto* life without parole sentence is unfounded. Consequently, defendant's reliance on *Graham* is unpersuasive.

¶ 26 Finally, we disagree with defendant's contention that punishing mentally ill prisoners by sentencing them to life without parole is cruel and unusual. In *Graham*, 560 U.S. at ___, 130 S. Ct. at 2022, the Supreme Court illustrated a two-step analysis for a claim that a punishment is categorically unconstitutional. First, a court evaluating such a claim "considers objective indicia of society's standards, as expressed in legislative enactments and state practice to determine whether there is a national consensus against the sentencing practice at issue." (Internal quotation marks omitted.) *Graham*, 560 U.S. at ___, 130 S. Ct. at 2022. Second, the court "must determine in the exercise of its own independent judgment whether the punishment in question violates the Constitution." *Graham*, 560 U.S. at ___, 130 S. Ct. at 2022. Defendant fails to convince us under either step that his sentence, and similar sentences imposed against other similarly situated defendants, is necessarily unconstitutional.

¶ 27 Defendant eschews the first step of the analysis. Defendant's only indication of punishment practices with respect to mentally ill persons comes from a Human Rights Watch

study, which found that mentally ill prisoners, on average, serve 15 more months of their sentences than other prisoners due to their more frequent violation of prison rules. *Ill-Equipped: U.S. Prisons and Offenders With Mental Illness*, Human Rights Watch 69 available at http://www.hrw.org/sites/default/files/reports/usa1003.pdf (2003). Rather than demonstrating a consensus against punishing them, this statistic shows that institutions generally punish mentally ill inmates more often than others. Moreover, this factoid is irrelevant to establishing a national consensus in sentencing legislation and its implementation by the courts.

¶ 28    Without evidence of a consensus against the sentencing practice defendant is challenging, we turn to the second step of our analysis. In *Graham*, 560 U.S. at ___, 130 S. Ct. at 2026, the Supreme Court relied on its earlier decision in *Roper v. Simmons*, 543 U.S. 551, 569 (2005), for the proposition that "because juveniles have lessened culpability they are less deserving of the most severe punishments." In contrast, defendant here cites no case indicating an offender whose mental illness falls short of criminal insanity is less culpable than other offenders generally. Defendant's citation to *Atkins v. Virginia*, 536 U.S. 304 (2002), for that proposition is unpersuasive as that case concerned persons who exhibited abnormally diminished intellectual functioning, not mentally ill persons.

¶ 29    Defendant further argues the four penological goals identified by the Court in *Graham* fail to justify sentencing mentally ill offenders to life without parole. However, the Court in *Graham* engaged in this analysis against the backdrop of its findings that (1) a national consensus had developed that disfavored sentencing juveniles to life without parole and (2) juvenile, nonhomicide offenders are inherently less culpable than adult and homicide offenders. In this case, we have concluded that no such consensus has developed against the sentencing practice defendant challenges and no such finding regarding the lessened culpability of mentally ill offenders is justified by case law. In light of these conclusions, particularly the penological ends of retribution and incapacitation are met by allowing courts to sentence mentally ill persons as severely as others. Defendant's reliance on the similarly impetuous nature of juveniles and mentally ill persons is insufficiently compelling to overcome the remaining flaws in defendant's argument that his sentence is categorically cruel and unusual.

¶ 30    Defendant's sentence is not precluded by a categorical constitutional ban. As defendant makes no argument that his sentence is grossly disproportionate to his crime under the usual term-of-years analysis, we agree with the State that defendant failed to show substantially that his sentence is cruel and unusual.

¶ 31                              C. Preindictment Delay

¶ 32    Next, defendant argues he made a substantial showing that the State violated his speedy-trial rights by engaging in preindictment delay to obtain a tactical advantage. We disagree.

¶ 33    At this stage, we accept as true defendant's factual allegations not contradicted by the trial record. *Hall*, 217 Ill. 2d at 334, 841 N.E.2d at 920. The aggravated battery in this case occurred on August 25, 2000. In July 2001, when four Livingston County indictments were pending against defendant but before defendant was charged in this case, according to an

affidavit attached to defendant's amended postconviction petition, defendant met with Livingston County State's Attorney Thomas Brown at Pontiac. At this meeting, according to defendant, Brown indicated that 19 additional charges against defendant were ready to be filed. Brown offered defendant a 12-year sentence in exchange for defendant's guilty plea to the pending and uncharged offenses. Defendant countered that the State would be unable to satisfy the speedy-trial statute if it charged him with 19 additional offenses. Brown asserted that the State would be able to prosecute defendant in each case by staggering indictments so that two to four charges were pending against defendant at any one time. According to the timetable of offenses and corresponding charges included in defendant's amended postconviction petition, the prosecution indeed staggered the charges as defendant alleges Brown indicated. Defendant was charged in this case on July 1, 2003, approximately 34 months after he committed the aggravated battery.

¶ 34     We first consider the State's contention that defendant's argument is procedurally defaulted because it was not raised on direct appeal. We agree with defendant that his argument was not forfeited or waived. Defendant relies on the exception to the forfeiture doctrine where facts essential to the claim appear outside the trial record. See *People v. Patterson*, 192 Ill. 2d 93, 129, 735 N.E.2d 616, 637 (2000) (reaching the merits of the defendant's postconviction petition as "[t]he evidentiary basis of the claims *** necessarily rests upon evidence that was *de hors* the direct appeal record"). This court has indicated that arguments based on matters *de hors* the trial record may best be pursued in a postconviction petition. *People v. Kunze*, 193 Ill. App. 3d 708, 725-26, 550 N.E.2d 284, 296 (1990). As defendant asserts, the alleged conversation between Brown and himself never appeared in the record either at trial or on direct appeal. Accordingly, defendant did not forfeit this argument.

¶ 35     Accepting defendant's allegations as true, we conclude defendant failed to make a substantial showing that his due-process rights were violated. The State filed the charge against defendant in case No. 172 within the applicable statute of limitations. Independent of statutes of limitations, the due-process clause of the fifth amendment to the United States Constitution (U.S. Const., amend. V) "has a limited role to play in protecting against oppressive delay" between the commission of a crime and the bringing of charges. *United States v. Lovasco*, 431 U.S. 783, 789 (1977). Due process requires dismissal where preindictment delay causes substantial prejudice to the accused and the delay "was an intentional device to gain tactical advantage over the accused." *United States v. Marion*, 404 U.S. 307, 324 (1971).

¶ 36     A defendant who claims preindictment delay violated his due-process rights must initially show he was actually and substantially prejudiced by the delay. *People v. Lawson*, 67 Ill. 2d 449, 459, 367 N.E.2d 1244, 1248 (1977). When such a showing is made, the burden shifts to the State to establish "the reasonableness, if not the necessity, of the delay." *Id.* If both prejudice caused by the delay and reasonableness of the delay are shown, then "the court must make a determination based upon a balancing of the interests of the defendant and the public. Factors the court should consider, among others, are the length of the delay and the seriousness of the crime." *Id.*

¶ 37     Here, defendant argues he suffered prejudice and the State gained a tactical advantage

-8-

because the preindictment delay subverted his speedy-trial rights. Of course, the rights to a speedy trial established by statute and the constitution are ordinarily not implicated until charges are filed. See *Lovasco*, 431 U.S. at 788-89. Moreover, this court already held that the prosecution of this case did not violate defendant's right to a speedy trial. *Gay*, 376 Ill. App. 3d at 803, 878 N.E.2d at 811. Defendant does not contest this holding. Even though the State's staggering of charges in this case rather than filing them all at once undoubtedly helped uphold defendant's right to a speedy trial in this case, defendant's claim is based upon his understanding that, but for the preindictment delay, the State would have been unable to prosecute him in this case within the limitations of the speedy-trial statute (725 ILCS 5/103-5(e) (West 2004)).

¶ 38    Defendant's presumption that this case would not have been prosecuted but for the preindictment delay is erroneous. Defendant filed his speedy-trial demand in this case on March 3, 2004. At that time, defendant had 3 cases pending sentencing, 10 cases (including this case) where guilt-innocence remained unresolved, and 1 case with a postconviction petition pending. Speedy-trial demands were simultaneously pending in several of these cases, including those awaiting sentencing. By statute, the 160-day speedy-trial period was tolled until defendant was sentenced on a pending charge. 725 ILCS 5/103-5(e) (West 2004); *Gay*, 376 Ill. App. 3d at 803, 878 N.E.2d at 811. "The time period between the day defendant was sentenced in [Livingston County] case Nos. 60, 61, and 62 on July 22, 2005, and the day defendant was tried in this case on August 30, 2005, is 38 days, well within the 160-day time period." *Gay*, 376 Ill. App. 3d at 801, 878 N.E.2d at 810. Thus, had the State charged defendant in case No. 172 along with the first charges subject to defendant's speedy-trial demand, defendant's prosecution in case No. 172 would have been timely. Accordingly, any preindictment delay in this case had no effect on the operation of defendant's speedy-trial rights. Defendant thus cannot establish prejudice, and in turn, defendant failed to make a substantial showing that any preindictment delay in this case violated due process.

¶ 39    Even allowing the possibility that the preindictment delay enabled the State to "subvert" defendant's right to a speedy trial, the supposed advantage defendant claims the State enjoyed by reason of its delay in bringing charges cannot be the kind of "tactical" edge which gives rise to a due-process violation. *Lovasco*, 431 U.S. at 786, dealt with preindictment delay attributable to the investigation of potential further charges against the defendant and other suspects. The Supreme Court refused to require prosecutors "to make charging decisions immediately upon assembling evidence sufficient to establish guilt." *Id.* at 794. Doing so, it found, would preclude prosecutors "from giving full consideration to the desirability of not prosecuting in particular cases. The decision to file criminal charges, with the awesome consequences it entails, requires consideration of a wide range of factors in addition to the strength of the *** case, in order to determine whether prosecution would be in the public interest." *Id.* "Rather than deviating from elementary standards of 'fair play and decency,' a prosecutor abides by them if he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt." *Id.* at 795. The Court cautioned against "subordinat[ing] the goal of 'orderly expedition' to that of 'mere speed.' " *Id*. at 795-96 (quoting *Smith v. United States*, 360 U.S. 1, 10 (1959)). Without discussion, the Court distinguished, on one hand, cases

where the prosecution had accumulated sufficient evidence to convict but waited to bring charges for reasons such as ensuring timely trial of the charges or considering whether prosecution is warranted by the public interest from, on the other, those where the prosecution delayed indictment to obtain a tactical advantage over the accused. *Lovasco*, 431 U.S. at 795.

¶ 40　　This distinction underlies our understanding of the kind of tactical delay and prejudice to the accused that give rise to a constitutional violation. The Supreme Court explicitly endorsed a hypothetical delay in bringing charges until the prosecution is certain it can proceed to trial with reasonable speed by distinguishing it from a delay for tactical purposes. *Id.* at 795. This consideration acknowledges the burden on constricted prosecutorial resources of filing an indictment. It is left to prosecutors to determine how much responsibility they can afford to undertake and to weigh costs with the public's interest in justice. *Id.* at 790 ("[T]he Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment.").

¶ 41　　The preindictment delay in this case is of the kind that does not implicate due-process concerns. The State reasonably withheld some claims while prosecuting others. This allowed the State to comply with the speedy-trial statute, to avoid spoiling the jury pool, and to await verdicts before deciding whether later claims needed to be prosecuted or the earlier penalties sufficed to serve the ends of justice. The staggering of the indictments in this case does not offend "those fundamental conceptions of justice which lie at the base of our civil and political institutions[ ] [citation] and which define the community's sense of fair play and decency[ ] [citation]." (Internal quotation marks omitted.) *Id.*

¶ 42　　Our determination that the delay in this case was not "tactical" in the sense discussed in *Marion* and *Lovasco* is bolstered by the examples of prejudice discussed by courts considering questions of preindictment delay. We note that neither party cites a single case where prejudice was found to result from preindictment delay. However, the cases the parties do cite indicate that a witness's inability to recall events, a witness's unavailability, the unavailability or destruction of evidence, or an increased probability of wrongful conviction may constitute cognizable prejudice. *Marion*, 404 U.S. at 326 (acknowledging the possibilities that "memories will dim, witnesses become inaccessible, and evidence be lost"); *United States v. Jackson*, 504 F.2d 337, 341 (8th Cir. 1974) (*en banc*) ("[W]e cannot say[ ] *** that the delay increased the likelihood of erroneous conviction of an innocent man."). Where it has been found, prejudice has been accompanied by extreme factual scenarios. See, *e.g.*, *United States v. Barket*, 530 F.2d 189, 196 (8th Cir. 1976) (*en banc*) (holding the trial court "was not clearly erroneous" in finding that the defendant was substantially prejudiced by a 47-month delay during which six potential witnesses died).

¶ 43　　Finally, the position defendant asks us to take–that the State's staggering of indictments to avoid running afoul of the speedy-trial statute constituted an unconstitutional, tactical preindictment delay–would lead to absurd results. Namely, if the State were required to file its charges against a defendant all at once as soon as they were prepared, then a defendant who committed multiple offenses could stand on his speedy-trial rights and thereby avoid prosecution. Essentially, defendant seeks to thwart prosecution of some of his 16 aggravated-

-10-

battery offenses merely by the fact–entirely within defendant's control–that they were committed in a brief period. This finds no support in the cases defendant cites.

¶ 44 Defendant can demonstrate neither prejudice to him nor tactical advantage attaining to the State that resulted from the lapse of time between his commission of aggravated battery and his prosecution in this case. Accordingly, defendant failed to make a substantial showing that preindictment delay caused a due-process violation.

¶ 45                     D. Ineffective Assistance of Appellate Counsel

¶ 46 Next, defendant argues he substantially showed he received ineffective assistance of counsel when, on direct appeal, his attorney failed to argue that the trial court circumvented defendant's speedy-trial rights by erroneously ordering a fitness hearing. Collateral estoppel precludes our reconsideration of this argument.

¶ 47 Defendant raised the same issue–that the trial court interfered with his speedy-trial rights by erroneously entering exactly the same order for a fitness examination and, moreover, defendant's appellate counsel was ineffective by failing to argue the error on direct appeal–in *People v. Gay*, No. 4-08-0368 (Sept. 11, 2009) (unpublished order under Supreme Court Rule 23). There, this court held defendant forfeited his argument by failing to raise it on direct appeal. Moreover, noting that defendant's counsel in one of his cases pending when the fitness examination was conducted applied for the examination, this court found defendant could not complain of an error he himself induced.

¶ 48 "The collateral estoppel doctrine bars relitigation of an issue already decided in a prior case." *People v. Tenner*, 206 Ill. 2d 381, 396, 794 N.E.2d 238, 247 (2002). "[T]he doctrine applies when a party *** participates in two separate and consecutive cases arising on *different* causes of action and some controlling fact or question material to the determination of both causes has been adjudicated against that party in the former suit by a court of competent jurisdiction." (Internal quotation marks omitted; emphasis in original.) *Id.* "The collateral estoppel doctrine has three requirements: (1) the court rendered a final judgment in the prior case; (2) the party against whom estoppel is asserted was a party or in privity with a party in the prior case; and (3) the issue decided in the prior case is identical with the one presented in the instant case." *Id.* Here, all three requirements are present with respect to defendant's argument here and in case No. 4-08-0368.

¶ 49 Notwithstanding the satisfaction of these requirements, defendant argues collateral estoppel should not apply because this court's decision in *People v. Gay*, No. 4-08-0368 (Sept. 11, 2009) (unpublished order under Supreme Court Rule 23), relied on an erroneous proposition of law. However, "erroneous judgments as well as correct ones are protected by the rule of collateral estoppel. However legally incorrect or logically inconsistent a decision may be, a litigant's only remedy is to appeal it. Error, however egregious, cannot be raised in a collateral proceeding." *Lady v. Montgomery Ward & Co.*, 80 Ill. App. 3d 69, 73, 399 N.E.2d 346, 349 (1980). Accordingly, regardless of the merits of this court's previous order, collateral estoppel precludes relitigation of defendant's argument.

¶ 50                                    E. Adequacy of Notice of Criminality

¶ 51        Finally, defendant argues he made a substantial showing that, in violation of due process, he received inadequate notice that the act for which he was prosecuted in this case could lead to prosecution. We disagree.

¶ 52        Defendant's claim is based on his interpretation of DOC rules codified in the Illinois Administrative Code. Attached to defendant's amended postconviction petition are all his DOC citations stemming from actions that later gave rise to defendant's prosecutions in this and other unconsolidated cases. The citation defendant received for the act at issue in this case was for offense No. 102, "ASSAULTING ANY PERSON." See 20 Ill. Adm. Code 504 app. A (2011). Defendant claims that, by enacting offense No. 501, "VIOLATING STATE OR FEDERAL LAWS" (see 20 Ill. Adm. Code 504 app. A (2011)), the State undertook to provide any prisoner with notice that his action subjects him to potential future prosecution. In turn, defendant argues, DOC's citation of defendant for offense No. 102, rather than offense No. 501, deprived him of the notice to which he is constitutionally entitled. In other words, defendant contends that, because DOC failed to cite him for violating offense No. 501, the State could not later charge him with any crime for the same act.

¶ 53        The State initially argues defendant forfeited this argument by failing to raise it at trial or on appeal. We disagree. Again, defendant relies on the exception to the forfeiture rules for arguments relying on facts outside the trial record. See *Patterson*, 192 Ill. 2d at 129, 735 N.E.2d at 637. Defendant's claim is based on matters *de hors* the record: namely, his DOC citations for the act at issue in this case and other acts during his imprisonment at Pontiac. Accordingly, defendant has not forfeited this argument.

¶ 54        Defendant's argument fails on the merits as defendant misconstrues the role of offense No. 501 in the disciplinary scheme. Title 20, section 504, of the Illinois Administrative Code establishes a scheme for punishing DOC inmates who violate internal disciplinary offenses. As independent penal mechanisms, nothing in the statutory or administrative laws prevents an inmate from facing DOC disciplinary charges and State criminal charges for a single unlawful act.

¶ 55        Offense No. 501 defines "VIOLATING STATE OR FEDERAL LAWS" as follows:

        "Committing any act that would constitute a violation of State or federal law. If the specific offense is stated elsewhere in this Part, an offender may not be charged with this offense except as otherwise provided in this Section. The State or federal offense must be specified in the disciplinary report." 20 Ill. Adm. Code 504 app. A (2011).

Under a plain reading of this offense, a corrections officer may not cite a defendant with offense No. 501 unless either (1) no other disciplinary offense is implicated by the offending behavior or (2) another subsection in the table of offenses allows citation of both offenses. In turn, only offense No. 310, "ABUSE OF PRIVILEGES," allows citation of both itself and offense No. 501. 20 Ill. Adm. Code 504 app. A (2011) ("[I]f the conduct also constitutes a violation of federal or State law, a committed person may also be charged under #501.").

¶ 56        Many of the disciplinary offenses cover acts that are criminal in nature: *e.g.*, violent assault, sexual assault, possession of controlled substances, bribery, and extortion. None of these offenses can be charged under offense No. 501. Defendant's position that offense No.

501 is a prerequisite for criminal charges is absurd; the legislature would have to have intended both (1) disciplinary offenses that constitute crimes may not be charged as offense No. 501 and (2) disciplinary offenses that are not charged as offense No. 501 may not be prosecuted as crimes. Were this so, no crime occurring in prison could be prosecuted in the courts. This is an impossible result.

¶ 57    In light of our interpretation of the offenses, DOC's citation of defendant for offense No. 102 rather than offense No. 501 did not affect the State's power to charge defendant with aggravated battery in this case. This conclusion is consistent with the enduring principle that "one's ignorance of the law furnishes no exemption from criminal responsibility for his acts." *People v. Cohn*, 358 Ill. 326, 331, 193 N.E. 150, 153 (1934). That is, the criminal statute is ordinarily sufficient in itself to provide the notice required by due process. A prison inmate is no less charged with knowing the prohibitions of the criminal laws by reason of the parallel enforcement of disciplinary offenses and crimes. Defendant has thus failed to show substantially that the proceedings in this case and the corresponding DOC disciplinary proceedings violated the notice requirements of due process.

¶ 58                                      III. CONCLUSION

¶ 59    For the foregoing reasons, we affirm the trial court's judgment. As part of our judgment, we award the State its $75 assessment against defendant as costs of this appeal.

¶ 60    Affirmed.