2017 IL App (1st) 142557

No. 1-14-2557

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT, FIRST DIVISION

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CR 485 |
| | ) | |
| DERRICK THOMAS, | ) | Honorable |
| | ) | Stanley J. Sacks, |
| Defendant-Appellant. | ) | Judge Presiding. |

**Opinion Filed:**   March 6, 2017

**Justice:**   Hon. Sheldon A. Harris, J., delivered the judgment of the court, with opinion.
Hon. John B. Simon, J., concurred in the judgment and opinion.
Hon. Mary L. Mikva, J., dissented, with opinion.

**Attorney for Appellant**   Michael J. Pelletier, State Appellate Defender, Office of the State Appellate Defender, 203 North LaSalle Street, 24th Floor, Chicago, IL 60601, (Patricia Mysza and Rebecca Cohen, of counsel), - *Derrick Thomas*.

**Attorney for Appellee**   Kimberly M. Foxx, State's Attorney, County of Cook, Room 309, Richard J. Daley Center, Chicago, IL 60602, (Alan J. Spellberg, Mary P. Needham and Jesse B. Guth, of counsel), - *The People of the State of Illinois*.

2017 IL App (1st) 142557

FIRST DIVISION
March 6, 2017

No. 1-14-2557

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CR 485 |
| | ) | |
| DERRICK THOMAS, | ) | Honorable |
| | ) | Stanley J. Sacks, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Justice Simon concurred in the judgment and opinion.
Justice Mikva dissented, with opinion.

**OPINION**

¶ 1    Following a jury trial, defendant Derrick Thomas was convicted of first degree murder, attempted first degree murder and attempted armed robbery. The jury found that in committing the first degree murder, defendant used a firearm that proximately caused the victim's death and in committing the attempted first degree murder, defendant personally discharged a firearm that proximately caused great bodily harm. Defendant, who was 18 years old at the time of these offenses, was sentenced to consecutive terms of 45 years for first degree murder, 31 years for attempted first degree murder, and 4 years for attempted armed robbery, for a total sentence of 80 years. On appeal, defendant argues that prison term represents a *de facto* life sentence that violates the bar against cruel and unusual punishment in the eighth amendment to the United States Constitution, as well as the proportionate penalties clause of the Illinois Constitution,

because the trial court lacked the ability to impose a lesser sentence in light of his age and rehabilitative potential and the attendant circumstances of his youth. Defendant also contends that his trial counsel was ineffective for failing to challenge his sentence as unconstitutional on those grounds.

¶ 2 The following evidence presented at trial is relevant to defendant's sentencing claim. Defendant was convicted of first degree murder for the fatal shooting of Arvon Grays and attempted first degree murder for shooting Terrance Redditt in his side.

¶ 3 At trial, Redditt testified that in 2011, he worked at a restaurant called Dillinger's in Calumet Park. Redditt and defendant exchanged phone numbers after Redditt showed defendant some jackets and tire rims that Redditt was selling out of the trunk of his car. About a week later, defendant called Redditt and brought a customer to him who bought $600 worth of rims.

¶ 4 On November 15, 2011, defendant called Redditt from a phone number that was different from the number defendant had previously given. They spoke about the tire rims and discussed a credit card scam that Redditt would perform. Defendant told Redditt that defendant's brother wanted to buy a set of rims from Redditt for $4200.

¶ 5 After that conversation, Redditt and Grays met defendant at 117th Street and Lowe Avenue in Chicago. Two teenagers were standing on the porch with defendant when Redditt and Grays drove up. Redditt asked defendant where the potential buyer was, and according to Redditt, defendant "got on the phone and made it like he was calling someone." Redditt walked back toward his car, where Grays sat, to get a cigarette. While standing with his back to defendant, Redditt told Grays he did not think defendant was going to buy anything and said defendant was "probably on some stickup stuff."

¶ 6    When Redditt turned back around to face defendant, defendant pointed a gun at Redditt's stomach and said, "Give me everything." Redditt asked defendant if he was "for real." Defendant shot Redditt in the stomach. Redditt ran away, and defendant fired two more shots, striking Redditt in the side. Redditt stated that he and Grays were not armed.

¶ 7    Defendant fled after Redditt shouted for help and pretended that he saw a police officer. Redditt made his way to a nearby porch and heard more gunshots. Redditt was taken by ambulance to Stroger Hospital, where he had surgery. Redditt testified that he continues to have stomach pains as a result of the shooting. Redditt identified defendant in a photograph and a police lineup. Grays was shot in the lower back and died from that wound.

¶ 8    Robert Williams testified that on the day of the shootings, defendant arrived at the house of a mutual friend. Diamond Isom was also present. Defendant asked to use Isom's phone because "he said he wanted to do a little sting or something like that." Williams testified that to "hit a sting" means to rob someone. Defendant showed Williams a gun in his pocket and said he planned to rob a friend that he had met.

¶ 9    Williams and Isom went on the porch with defendant. When a car drove up, defendant approached the car and spoke to the occupants, one of whom remained seated in the car. Williams later identified the driver of the car as Redditt. Defendant ordered them to not move and shot Redditt as Redditt fled. Williams did not see anyone else holding a weapon.

¶ 10    Isom testified that defendant paid her $50 to use her phone on the day of the shootings. She stated that defendant told her he "wanted to rob this man for his money and his car," and defendant showed her a gun. Isom and Williams followed defendant to make sure she got her phone back. Isom described the shootings consistently with the accounts of Williams and Redditt. After shooting Reddit, defendant shot Grays, who was sitting in the car.

¶ 11 In the defense case, defendant testified that he had met Redditt on November 15, 2011, at a location other than that described by Redditt. Defendant said Redditt approached him and they discussed a credit card scam and exchanged phone numbers. Defendant said he gave Redditt his mother's phone number.

¶ 12 Defendant admitted meeting Redditt at 117th Street and Lowe Avenue but denied telling Williams and Isom that he had a weapon and intended to rob someone. Defendant said that when Redditt arrived, Williams and Isom were present, and he was holding a gun that belonged to Williams' brother.

¶ 13 Defendant admitted that he shot Redditt and Grays but testified that he did so in self-defense. He stated that he fired shots after Redditt unsuccessfully tried to pull a gun from his own waistband. After his arrest, defendant initially told police he was not involved in the shooting. Defendant implicated Williams after Redditt identified defendant in a lineup.

¶ 14 The jury found defendant guilty on all charged counts. The jury further found that in committing the first degree murder, defendant used a firearm that proximately caused the victim's death and in committing the attempted first degree murder, defendant personally discharged a firearm that proximately caused great bodily harm to the victim.

¶ 15 At sentencing, the State noted that the minimum sentence for which defendant was eligible was 80 years in prison and the maximum sentence was natural life imprisonment. The minimum sentence for the murder count was 20 years in prison, to which was added a 25-year sentence enhancement for using a firearm that proximately caused the victim's death, making the sentencing range for that offense 45 years to life imprisonment. The minimum sentence for attempted murder was 6 years in prison, to which was added a 25-year sentence enhancement for discharging a firearm, making the sentencing range for that offense 31 years to life

imprisonment. The minimum sentence for attempted armed robbery was 4 years in prison, with the sentencing range for that offense being 4 to 15 years in prison.

¶ 16    The State presented a victim impact letter from Jeffana Fowlkes, Grays' sister. Acknowledging that defendant lacked a lengthy criminal history, the State described the case as "egregious," noting that he had tricked the victims into coming to him. The State pointed out that Grays was shot as he sat in the car and Redditt was shot as he ran away from defendant.

¶ 17    Defense counsel agreed to the applicable sentencing ranges but objected to the sentencing scheme, asserting that it "seems unconscionable to me." Counsel noted that defendant had a weapons arrest as a juvenile. The court stated it would not consider that offense. Defense counsel told the court that defendant was completing school while in jail. Counsel also stated that defendant had no gang affiliation and he may have sustained abuse and neglect as a child.

¶ 18    Before imposing sentence, the trial court noted: "I don't believe the sentence is unconscionable. The legislature feels it's an appropriate sentencing range. They determined that in their opinion it's not unconscionable." The court stated that at the time of the offense, defendant was a "young guy" at 18 years of age and is "still a young guy" at 21 years of age but that defendant was responsible for his actions of shooting two people and killing one.

¶ 19    The court stated that defendant's prison sentence was a result of his actions on the day of the offense, finding "[t]hat's what got him there. He's a young guy but he made his choices that day" by killing Grays and wounding Redditt. The court noted that defendant was receiving the minimum sentence possible but remarked it was "practically a life sentence" and that defendant would not be restored to useful citizenship "unless he lives to be a really old man possibly which hopefully he does." The trial court sentenced defendant to consecutive terms of 45 years for first degree murder and 31 years for attempted first degree murder, with each of those sentences

including a 25-year sentence enhancement for defendant's use of a firearm. The trial court also sentenced defendant to four years for attempted armed robbery, also to be served consecutively, for a total term of 80 years.

¶ 20    Defense counsel filed a motion to reconsider defendant's sentence, asserting the term was excessive given defendant's background and the nature of the offense, among other points. The trial court denied defendant's motion.

¶ 21    On appeal, defendant contends his 80-year sentence violates the eighth amendment to the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). Defendant asserts those protections were violated because the trial court was bound by the mandatory firearm sentencing enhancements that applied in his case and the court was not able to consider his age or the mitigating factors related to his youth to impose a term of less than 80 years. He argues his sentence should be vacated and his case remanded for a new sentencing hearing.

¶ 22    The eighth amendment to the United States Constitution, applicable to the states via the fourteenth amendment, bars cruel and unusual punishment, namely punishment that is "inherently barbaric" or is disproportionate to the offense. *Graham v. Florida*, 560 U.S. 48, 59 (2010). The proportionate penalties clause requires that sentences should be determined "both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." (Internal quotation marks omitted.) *People v. Rizzo*, 2016 IL 118599, ¶ 28.

¶ 23    "Constitutional challenges carry the heavy burden of successfully rebutting the strong judicial presumption that statutes are constitutional." (Internal quotation marks omitted.) *Id*. ¶ 23 (noting that tenet applies to legislative enactments that determine the penalties to be imposed for certain conduct). Defendant raises an as-applied constitutional challenge, asserting the

sentencing scheme here was unconstitutional as applied to the facts and circumstances of his case. See *People v. Thompson*, 2015 IL 118151, ¶¶ 36-37 ("an as-applied constitutional challenge is dependent on the particular circumstances and facts of the individual defendant or petitioner"). Although our discussion of relevant precedent will encompass both constitutional provisions, we note that the proportionate penalties clause has been found to offer greater protection to defendants than the eighth amendment. See *People v. Clemons*, 2012 IL 107821, ¶ 40; *People v. Wilson*, 2016 IL App (1st) 141500, ¶ 38, *appeal allowed*, No. 121345 (Ill. Nov. 23, 2016) (consolidated with *People v. Hunter*, 2016 IL App (1st) 141904); *People v. Pace*, 2015 IL App (1st) 110415, ¶ 139.

¶ 24   Defendant's claim of cruel and unusual punishment is based on three recent United States Supreme Court cases, the most recent of which is *Miller v. Alabama*, 567 U.S. ___, ___, 132 S. Ct. 2455, 2469 (2012), which held that mandatory sentences of life in prison without the possibility of parole for juvenile offenders convicted of homicide violate the eighth amendment. The Court held that such a mandatory sentence precludes the trial court's consideration of mitigating factors including the juvenile's age and attendant characteristics and the nature of the individual crime. *Id*. at ____, 132 S. Ct. at 2468. Defendant also relies on *Roper v. Simmons*, 543 U.S. 551 (2005), which found unconstitutional under the eighth amendment the imposition of capital punishment for a crime committed when the offender was younger than 18 years of age, and *Graham*, which found the eighth amendment was violated by a sentence of life imprisonment without the possibility of parole for juvenile offenders convicted of offenses other than homicide. *Graham*, 560 U.S. at 75.

¶ 25   As defendant concedes, his case differs from *Miller*, *Roper* and *Graham* in that he was an adult, and not a juvenile offender, at the time of these crimes. Still, defendant maintains that it is

highly improbable, given the length of his sentence and his age, that he will outlive his term of incarceration, and he thus asserts his 80-year term represents a *de facto* life sentence. The parties agree on appeal that even with good-time sentencing credit, defendant must serve the majority of his term, namely, at least 73 years of his 80-year sentence.

¶ 26    Although the Illinois Supreme Court has not addressed the application of *Miller* to an adult defendant, it has stated that the rationale of *Miller*, *Roper*, and *Graham* applies "only in the context of the most severe of all criminal penalties." *People v. Patterson*, 2014 IL 115102, ¶ 110. During the pendency of this appeal, the supreme court held in *People v. Reyes*, 2016 IL 119271, ¶¶ 9-10, that a mandatory 97-year prison term for a 16-year-old juvenile offender operates as a *de facto* life sentence "that is the functional equivalent of life without the possibility of parole [and] constitutes cruel and unusual punishment in violation of the eighth amendment." *Reyes* does not warrant a similar result here, where defendant was not a juvenile offender. The supreme court in *Reyes* did not indicate it would extend the protections of *Miller* to adult offenders.

¶ 27    In a case involving an adult defendant, this court has rejected attempts to compare a lengthy prison term to a *de facto* life sentence without parole. In *People v. Gay*, 2011 IL App (4th) 100009, ¶¶ 19-25, this court held that a 97-year term composed of consecutive sentences for the defendant's 16 felony convictions did not amount to cruel and unusual punishment, noting that the eighth amendment "allows the State to punish a criminal for each crime he commits, regardless of the number of convictions or the duration of sentences he has already accrued." *Gay*, 2011 IL App (4th) 100009, ¶ 25.

¶ 28    Therefore, this court has held that where an adult defendant receives a sentence that approaches the span of the defendant's lifetime, that term does not implicate the eighth amendment right barring cruel and unusual punishment. Defendant cannot demonstrate

otherwise under *Miller*, *Roper*, and *Graham*, which involve capital punishment or life sentences without parole for juvenile offenders.

¶ 29    We next consider defendant's claims that his sentence should be vacated under the proportionate penalties clause of the Illinois Constitution. A challenge under the proportionate penalties clause "contends that the penalty in question was not determined according to the seriousness of the offense." *People v. Sharpe*, 216 Ill. 2d 481, 487 (2005). Defendant contends that the trial court had no choice but to impose a minimum term of 80 years and lacked the discretion to consider his age, the characteristics of youth, and his capacity for rehabilitation. As a result, his 80-year prison sentence violates the standard that a punishment must not be cruel, degrading, or wholly disproportionate to the offense as to shock the moral sense of the community. See *Rizzo*, 2016 IL 118599, ¶ 37 (and cases cited therein).

¶ 30    Defendant's 80-year sentence includes two mandatory firearm enhancements imposed pursuant to section 5-8-1(a)(1)(d) of the Unified Code of Corrections (the Unified Code) (730 ILCS 5/5-8-1(a)(1)(d) (West 2010)). A 25-year enhancement was added to defendant's sentence for first degree murder based on the jury's finding that defendant personally discharged a firearm that proximately caused Grays' death. 730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2010) (requiring that an additional term of between 25 years to natural life imprisonment be added to a sentence if, during the commission the offense, the defendant personally discharged a firearm that proximately caused "great bodily harm, permanent disability, permanent disfigurement, or death to another person"). Under the same provision, another 25-year enhancement was added to defendant's sentence for attempted first degree murder based on the jury's finding that defendant discharged a firearm that proximately caused great bodily harm to Redditt. Because defendant

inflicted severe bodily injury and was convicted of first degree murder, the trial court was required to impose consecutive sentences. See 730 ILCS 5/5-8-4(d)(1) (West 2012).

¶ 31    The two mandatory enhancements in this case total 50 years and comprise more than half of defendant's 80-year sentence. As to the rest of defendant's sentence, the trial court imposed the minimum base sentence for each of defendant's three felony convictions, sentencing defendant to 20 years for first degree murder, 6 years for attempted murder, and 4 years for attempted armed robbery. See 730 ILCS 5/5-4.5-20(a) (West 2010) (sentencing range for murder is 20 to 60 years); 720 ILCS 5/8-4(c)(1)(D) (West 2010) (attempted first degree murder is subject to a Class X felony sentence and a 25-year enhancement when the use of a firearm proximately causes great bodily harm); 730 ILCS 5/5-4.5-25(a) (West 2010) (Class X felony sentencing range is 6 to 30 years); 730 ILCS 5/18-2(b) (West 2010); 720 ILCS 5/8-4(c)(2) (West 2010); 730 ILCS 5.5-4.5-30(a) (West 2010) (armed robbery is a Class X felony, and the attempt to commit a Class X felony is punishable under the Class 1 felony sentencing range of 4 to 15 years). The trial court could have imposed two terms of natural life imprisonment against defendant under the mandatory firearm enhancements but elected not to do so.

¶ 32    Our supreme court has upheld the constitutionality of mandatory firearm enhancements under the proportionate penalties clause, finding that in fixing a penalty for an offense, the potential for rehabilitation need not be given greater weight or consideration than the seriousness of the offense. *Sharpe*, 216 Ill. 2d at 525. Mandatory firearm enhancements are intended "to promote public health and safety, and to impose severe penalties that will deter the use of firearms in the commission of felonies." *People v. Butler*, 2013 IL App (1st) 120923, ¶ 36. The legislature considered the use of firearms during the commission of felonies a serious concern, and the enhanced sentences reflect the legislature's intent in this regard. *Sharpe*, 216 Ill. 2d at

525-26. Our supreme court also determined that the legislature took into account rehabilitative potential when the firearm enhancements are applied. *Id*. at 526.

¶ 33    Defendant, however, argues that the sentencing scheme applied to him, an 18-year-old when he committed the offenses, violates the proportionate penalties clause because he was young and the trial court was precluded from considering the hallmarks of youth (lack of maturity, underdeveloped sense of responsibility, etc.) before imposing a term of 80 years in prison. As support, defendant cites *People v. Brown*, 2015 IL App (1st) 130048, ¶ 46, *People v. Gipson*, 2015 IL App (1st) 122451, ¶ 69, *appeal allowed*, No. 119594 (Ill. Nov. 23, 2016), and *People v. House*, 2015 IL App (1st) 110580, ¶ 101. Two cases involved juvenile offenders: *Brown* involved a 16-year-old defendant and *Gipson* involved a 15-year-old defendant, both of whom were tried as adults. Since defendant was an 18-year-old adult offender when he committed the offenses, those cases are not applicable here.

¶ 34    *House*, involved a 19-year-old adult offender who was sentenced to natural life imprisonment for two counts of first degree murder. *Id*. ¶ 3. That term was imposed pursuant to an Illinois statute mandating a natural life term for defendants 17 years or older found guilty of murdering more than one victim. *Id*. ¶ 82 (citing 730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 1998)). That statute, known as the multiple-murder provision of the Unified Code, has since been amended to raise the applicable age to 18 years. *Id*. ¶ 82 n.2 (citing Pub. Act 99-69 § 10 (eff. Jan. 1, 2016)). In finding the multiple-murder provision unconstitutional under the proportionate penalties clause as applied to that defendant, the *House* court noted that although the defendant was an adult, he was convicted on an accountability theory and his participation in the offense was limited to acting as a lookout. *Id.* ¶ 89 (observing that the defendant received "the same sentence applicable to the person who pulled the trigger"). However, *House* does not support the

same outcome here. Unlike *House*, the defendant here was the active shooter convicted of first degree murder using a firearm that proximately caused one victim's death. Additionally, his attempted murder conviction resulted from shooting at a surviving victim three times where one bullet entered the victim's stomach, another in his side. Defendant's convictions were based on his own actions as opposed to accountability for the acts of another found in *House*.

¶ 35    After *House* was decided, this court addressed a similar case involving an adult offender and rejected the defendant's proportionate penalties claim. In *People v. Ybarra*, 2016 IL App (1st) 142407, ¶¶ 1, 22, the defendant, who was 20 years old at the time of the crime, was convicted of three counts of first degree murder and received a mandatory natural life sentence under the same statute applicable in *House*. In sentencing the defendant, the trial court heard evidence in mitigation of the defendant's sentence but stated that even if it had discretion to impose a lower term, it would still sentence the defendant to natural life in prison. *Id*. ¶ 18. Affirming that sentence, this court distinguished the facts before it from those in *House*, noting the defendant had acted in a premeditated fashion and "pulled the trigger repeatedly[,] *** kill[ing] three teenagers on the street as they left school one afternoon." *Id*. ¶¶ 27-30.

¶ 36    Defendant here contacted Redditt and told Redditt that he knew someone who would purchase tire rims from him. Defendant told Williams that he planned to rob Redditt, and defendant paid Isom to use her cell phone to avoid detection. After Redditt and Grays arrived, defendant shot at Redditt, striking him in the stomach, and then chased him and fired two more shots at the fleeing Redditt, one of which struck him in his side. Defendant also fatally shot Grays in the back as he sat in the car. At sentencing, the trial court stated that it did not find the sentence imposed unconscionable and that the legislature did not find it unconscionable. Although at the time of the offense defendant was a "young guy" at 18 years of age, he was

"responsible for his actions of shooting two people and killing one." The court stated that defendant's prison sentence was the result of his actions that day, finding "[t]hat's what got him there. He's a young guy but he made his choices that day" by killing Grays and wounding Redditt. The facts of this case reveal culpable behavior by defendant comparable to the intentional acts of the defendant in *Ybarra*, rather than the conduct resulting in the defendant's accountability conviction in *House*.

¶ 37   We note that while this appeal was pending, another division of the first district decided *People v. Harris*, 2016 IL App (1st) 141744. In *Harris*, the court held, contrary to our determination here, that the 76-year sentence given to the defendant who was 18 years old at the time of the offense, violated the proportionate penalties clause of the Illinois constitution because the trial court was not allowed to consider the defendant's rehabilitative potential. The *Harris* court acknowledged that *Miller*, *Roper*, and *Graham* applied only to juvenile defendants. However, with one justice dissenting, two justices determined that the "Illinois Supreme Court has recognized that research on juvenile maturity and brain development might also apply to young adults." *Id.* ¶ 61. As support, the court cited to *Thompson*, 2015 IL 118151, and concluded that although *Thompson* did not explicitly extend *Miller* to young adults, "it did open the door for that argument." *Harris*, 2016 IL App (1st) 141744.

¶ 38   We respectfully disagree with *Harris*. As will be shown, the majority opinion in *Harris* wrongly claims *Thompson* as authority to argue extending the juvenile sentencing reasoning in *Miller* to include young adults, *i.e.* those defendants 18 years or older. We decline to follow the well-meaning but false interpretation of precedent authored by the majority in *Harris* to judicially advance greater sentencing discretion to trial judges. This is the province of the legislature.

¶ 39    In *Thompson*, the defendant was convicted of two counts of first degree murder for fatally shooting his father and a woman inside his father's house. *Thompson*, 2015 IL 118151, ¶ 4. The defendant was 19 years old at the time of the shootings. Seventeen years after his conviction, the defendant sought relief and filed a petition pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2010)). In his petition, the defendant argued that the trial court violated his right to due process, and he also alleged various deficiencies on the part of his counsel. *Thompson*, 2015 IL 118151, ¶ 14. The State filed a motion to dismiss the petition as untimely, which the trial court granted. *Id*. ¶ 15. On appeal, the defendant abandoned all of his contentions in his original petition and argued for the first time that the sentencing statute was unconstitutional as applied to him because he was 19 years old at the time, had no criminal history, and his actions resulted from years of abuse by his father. *Id*. ¶ 17.

¶ 40    The issue in *Thompson* was whether the defendant could raise his as-applied constitutional challenge for the first time on appeal. The defendant stated he was not asking the supreme court to look at the merits of his argument that *Miller* should apply to his mandatory life sentence. Rather, he merely argued that he should be able to bring the matter to the appellate court for substantive review of the issue. *Id*. ¶ 22. Therefore, the question facing our supreme court in *Thompson* was "whether defendant's as-applied constitutional challenge to his sentence is procedurally barred or forfeited because defendant failed to include that claim in his section 2-1401 petition." *Id*. ¶ 25.

¶ 41    To resolve the issue, the court in *Thompson* noted that a section 2-1401 petition must be filed within two years of final judgment, and an exemption from this procedural bar "is available only for specific types of claims." *Id*. ¶ 31. The court determined that although a facial

constitutional challenge may be raised at any time, the defendant's as-applied constitutional challenge to his sentence was "not a type recognized by any of our precedents as exempt from the typical procedural bars of section 2-1401." *Id.* ¶ 34.

¶ 42      Our supreme court reasoned that the resulting injustices are not the same in both cases, because an as-applied challenge requires a showing of a violation based on the facts and circumstances of a specific party, whereas a facial constitutional challenge requires a showing that the statute is unconstitutional under any set of facts. *Id.* ¶ 36. As illustration, the court referred to the defendant's as-applied challenge and his reliance on the evolving science of juvenile maturity and brain development "that formed the basis of the *Miller* decision to ban mandatory natural life sentences for minors." *Id.* ¶ 38. The court noted that because the defendant raised this issue for the first time on appeal, the record "contains nothing about how that science applies to the circumstances of defendant's case" or "any factual development on the issue of whether the rationale of *Miller* should be extended beyond minors under the age of 18." *Id.* It determined that the trial court "is the most appropriate tribunal" to address defendant's as-applied challenge. *Id.*

¶ 43      The supreme court in *Thompson* did not "open the door" for defendants to argue that the reasoning in *Miller* should be extended to young adults over the age of 18. Rather, it determined that the defendant forfeited his challenge to his sentence under *Miller* by raising it for the first time on appeal. *Id.* ¶ 39. Although the court in *Thompson* noted that the defendant "is not necessarily foreclosed from renewing his as-applied challenge in the circuit court," it expressed "no opinion on the merits of any future claim raised by defendant in a new proceeding." *Id.* ¶ 44.

¶ 44      Our dissenting colleague would follow *Harris* to find that defendant's sentence here violates the proportionate penalties clause, because the protections of the clause go beyond that

of the eighth amendment and require the trial court to consider rehabilitative potential before imposing a sentence. We agree that the proportionate penalties clause goes beyond the protections of the eighth amendment in this sense. However, as our supreme court found in *Sharpe*, the legislature did consider rehabilitative potential when it created the mandatory firearm enhancements that constitute 50 years of defendant's 80-year sentence. Although defendant argues that, given his age, his rehabilitation potential should receive greater consideration, our supreme court has determined that the potential for rehabilitation need not be given greater weight than the seriousness of the offense. *Sharpe*, 216 Ill. 2d at 525.

¶ 45    The dissent also argues that since defendant was only 18 years old when he committed the offenses, he is more similar to the juvenile defendants in *Roper*, *Graham*, and *Miller*; therefore, defendant's sentence imposed without due consideration of the hallmarks of youth and rehabilitation potential violates the proportionate penalties clause. Our supreme court has never defined what constitutes cruel or degrading punishment, or what punishment is so disproportionate to the offense that it shocks the moral sense of the community. *People v. Miller*, 202 Ill. 2d 328, 339 (2002) (*Leon Miller*). It has not supplied a precise definition "because, as our society evolves, so too do our concepts of elemental decency and fairness which shape the 'moral sense' of the community." *Id*.

¶ 46    In *Leon Miller*, our supreme court recognized "a marked distinction between persons of mature age and those who are minors" and that "[t]his distinction may well be taken into consideration by the legislative power in fixing the punishment for crime, both in determining the method of inflicting punishment and in limiting its quantity and duration." (Internal quotation marks omitted.) *Id*. at 342. The Illinois General Assembly did subsequently draw the line between "persons of mature age" and minors for purposes of sentencing. It enacted a new

- 17 -

sentencing provision (730 ILCS 5/5-4.5-105 (West Supp. 2015)), effective January 1, 2016, providing that "when a person commits an offense and the person is under 18 years of age at the time of the commission of the offense" the sentencing court shall consider the following factors in addition to mitigation factors:

"(1) the person's age, impetuosity, and level of maturity at the time of the offense, including the ability to consider risks and consequences of behavior, and the presence of cognitive or developmental disability, or both, if any;

(2) whether the person was subjected to outside pressure, including peer pressure, familial pressure, or negative influences;

(3) the person's family, home environment, educational and social background, including any history of parental neglect, physical abuse, or other childhood trauma;

(4) the person's potential for rehabilitation or evidence of rehabilitation, or both;

(5) the circumstances of the offense;

(6) the person's degree of participation and specific role in the offense, including the level of planning by the defendant before the offense;

(7) whether the person was able to meaningfully participate in his or her defense;

(8) the person's prior juvenile or criminal history[.]"

¶ 47    The legislature, pursuant to its authority, has determined that the youth-related considerations above are relevant in sentencing only for defendants who were under the age of 18 when they committed their offenses. Therefore, for defendants 18 years of age or older when they committed their offenses, the legislature has deemed that failure to take those factors into account does not render a sentence cruel or degrading, or so disproportionate to the offense that it shocks the moral sense of the community. Although one can make a case that the 18-year-old

defendant here is not much different from a 17-year-old in terms of youthful characteristics, a line must be drawn at some point. *House*'s citation to scholarly authority, pointing out the fact that Germany and the Netherlands extend juvenile justice considerations to young adults ages 18 to 21, and Sweden does the same for young adults up to the age of 25, illustrates this problem. See *House*, 2015 IL App (1st) 110580, ¶ 96. Where should the line be drawn? At this time, our legislature has determined that at the age of 18, a person is an adult for sentencing purposes. This determination is not without support. As the Supreme Court acknowledged in *Roper*, although "[t]he qualities that distinguish juveniles from adults do not disappear when an individual turns 18," that age "is the point where society draws the line for many purposes between childhood and adulthood." *Roper*, 543 U.S. at 574. We agree with the dissent in *Harris* that "it is for the legislature, and not the courts, to revisit the sentencing scheme and afford greater discretion to trial judges" for defendants 18 years of age or older. *Harris*, 2016 IL App (1st) 141744, ¶ 80 (Mason, J., concurring in part and dissenting in part). For these reasons, we decline to follow *Harris*.

¶ 48    In conclusion, as an adult offender defendant cannot obtain relief under the holdings of *Miller*, *Roper*, and *Graham*. Moreover, defendant's sentence did not violate the proportionate penalties clause because mandatory firearm enhancements are intended to account for the serious nature of weapons offenses as well as defendant's rehabilitative potential. The record also establishes that, in its discretion, the trial court considered defendant's age and background in imposing the shortest possible sentence in this case. Therefore, defendant has not demonstrated a violation of his constitutional rights under either the eighth amendment or the proportionate penalties clause.

¶ 49    Defendant's remaining contention on appeal is that his trial counsel was ineffective for failing to raise these constitutional arguments at his sentencing hearing. He asserts his counsel should have argued to the trial court that it could impose a sentence lower than the statutory minimum if it found the mandatory minimum sentence unconstitutional as applied to defendant.

¶ 50    In essence, defendant contends the trial court would have sentenced him to a term of less than 80 years had the court been made aware of the precedent that defendant now presents here. He argues the trial court was in the best position to consider whether the holdings of *Miller* and the other cases discussed above should extend to defendants between the ages of 18 and 21.

¶ 51    To establish ineffective assistance of counsel, a defendant must satisfy the test in *Strickland v. Washington*, 466 U.S. 668, 694 (1984), namely that (1) counsel's performance was objectively unreasonable compared with prevailing professional standards, and (2) there is a reasonable probability that but for those errors, the result of the proceeding would have been different. This court can resolve such a claim by considering only whether defendant has met the prejudice prong, which "necessitates a showing of actual prejudice, not simply speculation that defendant may have been prejudiced." *Patterson*, 2014 IL 115102, ¶ 81.

¶ 52    Defendant's argument on this point relies on speculation that, had his counsel explained the *Miller* decision in detail at sentencing, the trial court would have ventured below the statutory minimum sentence. Defendant contends that the trial court failed to "highlight the science underlying *Roper*, *Graham* and *Miller*, which makes [defendant] less culpable." Despite defendant's repeated assertions to the contrary, those cases do not address the culpability of an adult defendant. Here, the trial court clearly indicated that defendant was an 18-year-old offender who was responsible for his acts of shooting two people, one fatally.

¶ 53    The additional authority cited by defendant on this point is not persuasive. Defendant directs us to *Leon Miller*, in which the trial court imposed a 50-year sentence for a 15-year-old offender who was charged with two counts of first degree murder based on an accountability theory, despite the statutorily mandated sentence of natural life imprisonment required by the multiple-murder provision of the Unified Code (730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 1996)). The supreme court affirmed the imposition of a 50-year term for that defendant, finding the sentencing scheme involved the automatic transfer of 15- and 16-year-olds charged with murder to adult court and the requirement that the defendant be held equally responsible as the principal in the offense, as well as the application of the multiple-murder statute. *Leon Miller*, 202 Ill. 2d at 340-41. Finding the required sentence of natural life imprisonment was "particularly harsh and unconstitutionally disproportionate" and "does not accurately represent defendant's personal culpability," the supreme court noted in *Leon Miller* that "defendant was tried as if he were the adult shooter in the crime." *Id*. We do not find the facts of *Leon Miller* require a similar result here, where defendant was an adult and was the gunman.

¶ 54    For all of the reasons set forth above, defendant's 80-year sentence was constitutional under the eighth amendment and the proportionate penalties clause. In addition, defendant did not receive ineffective assistance of counsel at sentencing.

¶ 55    Accordingly, the judgment of the trial court is affirmed.

¶ 56    Affirmed.


¶ 57    JUSTICE MIKVA, dissenting in part:

¶ 58    I join in that part of the court's decision rejecting Derrick Thomas's claim that his trial counsel was ineffective. However, I believe that he has demonstrated a violation of his

constitutional rights under the proportionate penalties clause of the Illinois Constitution and that we should follow the recent decision by another panel in this district in *People v. Harris*, 2016 IL App (1st) 141744.

¶ 59 The court's opinion in this case does not dispute that the constitutional claim raised by Derrick Thomas here is identical to the one that the court recognized in *Harris*. Like Darien Harris, Derrick Thomas was 18 years old at the time of his crimes; Derrick Thomas received a sentence of 80 years, which even more clearly than Darien Harris's 76-year sentence is a *de facto* life sentence; Derrick Thomas, like Darien Harris, had no previous adult criminal record; and most significantly, the sentence Derrick Thomas received was, like that received by Darien Harris, the minimum sentence available for the trial court to impose after taking into consideration statutorily required minimum sentences, sentencing enhancements, and required consecutive sentences. See *Harris*, 2016 IL App (1st) 141744, ¶¶ 15, 32. As in *Harris*, the trial court here was prevented from exercising any discretion to impose a lesser sentence. *Id.* ¶ 71.

¶ 60 I agree with the majority in this case, at *supra* ¶ 44, that the Illinois Supreme Court's decision in *People v. Thompson*, 2015 IL 118151, expressed "no opinion" on whether the prohibition on mandatory life sentences for defendants who were under the age of 18 at the time of their crimes should be extended to an 18-year-old defendant, as in this case and in *Harris*, or to a 19-year-old defendant, as in *Thompson*. However, I think that both *Harris* and the precedent it cites, *People v. House*, 2015 IL App (1st) 110580, offer compelling reasons for holding that, in this case, the imposition of a mandatory *de facto* life sentence violates the proportionate penalties clause of the Illinois Constitution, which provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const.1970, art. I, § 11.

- 22 -

¶ 61 As our court recognized in *Harris:*

> "In recent years, the United States Supreme Court has held that the eighth amendment protects juvenile offenders from capital punishment or mandatory life imprisonment without parole. *Roper*, 543 U.S. at 578-79; *Graham v. Florida*, 560 U.S. 48, 82 (2010); *Miller v. Alabama*, 567 U.S. ___, ___, 132 S. Ct. 2455, 2475 (2012). These holdings were grounded in the Court's concern, based on scientific research about adolescent brain development, that juveniles lack maturity, are more vulnerable to bad influences, and are more amenable to rehabilitation. *Roper*, 543 U.S. at 570." *Harris*, 2016 IL App (1st) 141744, ¶ 56.

¶ 62 This trio of United States Supreme Court cases held that both capital punishment and mandatory life imprisonment without parole are unconstitutional penalties for defendants who were under the age of 18 at the time of their crimes. These cases rested on extensive research which the Court summarized as follows in *Miller:*

> "Because juveniles have diminished culpability and greater prospects for reform, we explained, they are less deserving of the most severe punishments. [Citation.] Those cases relied on three significant gaps between juveniles and adults. First, children have a lack of maturity and an underdeveloped sense of responsibility, leading to recklessness, impulsivity, and heedless risk-taking. [Citation.] Second, children are more vulnerable ... to negative influences and outside pressures, including from their family and peers; they have limited contro[l] over their own environment and lack the ability to extricate themselves from horrific, crime-producing settings. [Citation.] And third, a child's character is not as well formed as an adult's; his traits are less fixed and his actions less likely to be evidence of

irretrievabl[e] deprav[ity]." (Internal quotation marks omitted.) *Miller*, 567 U.S. at

___, 132 S. Ct. at 2464.

¶ 63   Our supreme court, in *People v. Reyes*, 2016 IL 119271, extended this trio of United States

Supreme Court cases to hold that it was also unconstitutional to impose a mandatory term-of-

years sentence that was so lengthy that is was a *de facto* sentence of life without parole on a

defendant who was under the age of 18 at the time of the crime. Although the State does not

formally admit that the sentence Derrick Thomas received is a *de facto* sentence of life without

parole, it acknowledges that the shortest sentence that he could actually serve would be 73 years

and 4 months, which would make him 92 years old when he is released. This is a *de facto* life

sentence.

¶ 64   Although neither *Reyes* nor the United States Supreme Court cases discuss this explicitly, it

is worth noting that only a young adult has any chance of serving a significant portion of such a

lengthy sentence. Someone sentenced to jail at the age of 40 or 50 will in fact spend far less time

in prison than a younger person, even if he or she is given the exact same sentence. Thus, instead

of being given shorter sentences because of their youth, these younger defendants are actually

punished far more harshly than their older counterparts.

¶ 65   Our state constitution specifically mandates that penalties in Illinois have "the objective of

restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11; *Harris*, 2016 IL App

(1st) 141744, ¶ 58. Any consideration of this objective of rehabilitative potential necessitates that

a trial court has the ability to consider the defendant's youth, together with the extensive research

on juvenile maturity and brain research that led to the holdings by the United States Supreme

Court in the trio of cases culminating in *Miller*. I also agree with the court in *Harris* that the

proportionate penalties clause of the Illinois constitution " 'went beyond the framers'

understanding of the eighth amendment and is not synonymous with that provision.' " 2016 IL App (1st) 141744, ¶ 36 (quoting *People v. Clemons*, 2012 IL 107821, ¶ 40). Our constitution makes the very specific commandment, not present in the eighth amendment, that in sentencing we must consider rehabilitative potential. Thus, while the United States Supreme Court cases drew the line, for eighth amendment purposes, at defendants who were younger than the age of 18 when they committed their crimes, that limitation need not and should not apply to the proportionate penalties clause of our constitution. As the United States Supreme Court recognized itself in *Roper*, "[t]he qualities that distinguish juveniles from adults do not disappear when an individual turns 18." 543 U.S. at 574.

¶ 66   Moreover, when the United States Supreme Court drew the line in *Roper* at defendants who were under the age of 18 when their crimes were committed, it was in the context of holding that the death penalty could never be imposed. As the Supreme Court recognized, for such a categorical rule, "a line must be drawn." However, the holding in *Harris* was not that the *de facto* life sentence could never be imposed. Rather, that such a sentence should not be imposed—as it was in that case and as it was for Derrick Thomas—without the trial court being given an opportunity to consider the defendant's potential for rehabilitation.

¶ 67   Our court in *House*, in deciding that youth remained a relevant factor for a defendant who was convicted of two murders that occurred when he was 20 years old, cited several scholarly articles recognizing that several European countries have extended juvenile justice considerations to include, in Germany and in the Netherlands for example, all young adults from ages 18 to 21 and, in Sweden, young adults up to the age of 25. 2015 IL App (1st) 110580, ¶ 96.

¶ 68  The result in this case is particularly at odds with the theme of judicial discretion underlying this state's statutory sentencing scheme, a theme that has been repeatedly underscored by both our supreme court and by our colleagues in the appellate court:

> "The trial court has broad discretionary powers in imposing a sentence, and its sentencing decisions are entitled to great deference. [Citation.] A reviewing court gives great deference to the trial court's judgment regarding sentencing because the trial judge, having observed the defendant and the proceedings, has a far better opportunity to consider these factors than the reviewing court, which must rely on the 'cold' record. [Citation.] The trial judge has the opportunity to weigh such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. [Citations.] Consequently, the reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently." (Internal quotation marks omitted.) *People v. Alexander*, 239 Ill. 2d 205, 212-13 (2010).

See also *People v. Decatur*, 2015 IL App (1st) 130231, ¶ 12 ("the trial court, having observed the defendant and the proceedings, is better suited to consider sentencing factors than the reviewing court, which relies on the 'cold' record").

¶ 69  When it sentenced Derrick Thomas, the trial court in this case had no opportunity to consider any factors, including his age or, as our constitution expressly mandates, "the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. The trial court specifically remarked that, because of the mandatory minimum consecutive sentencing statutes, it was "unable to consider" whether Derrick Thomas "could be restored to useful citizenship."

The trial court also acknowledged that the events that ended with Derrick Thomas killing one man and badly wounding another began as a "nonsensical plan." The court summarized the "problem" as follows: "18 years old, has a gun available to him and he uses it in this case to shoot two people." It is certainly possible that, if allowed to consider it, the trial court would have viewed this tragic incident as an effect of "recklessness, impulsivity and heedless risk-taking." *Miller*, 567 U.S. at ___, 132 S. Ct. at 2464; see *Roper*, 543 U.S. at 569. It is also possible that the trial court would have believed that Derrick Thomas, like the defendants who were under the age of 18 at the time of their crimes in *Roper*, *Graham*, and *Miller*, suffered from a "lack of maturity and an underdeveloped sense of responsibility, leading to recklessness, impulsivity, and heedless risk-taking," that he was young enough to be unduly subject "to negative influences and outside pressures," that his traits were "less fixed" than those of an adult, and that "his actions [were] less likely to be evidence of irretrievabl[e] deprav[ity]." (Internal quotation marks omitted.) *Miller*, 567 U.S. at ___, 132 S. Ct. at 2464. If we followed *Harris* and *House*, we could remand this case and allow the trial court to consider the facts bearing on this particular defendant's potential for rehabilitation.

¶ 70 The majority distinguishes *House*, in which the court also found that a mandatory life sentence for a young offender—in that case a 20-year-old—was unconstitutional. *Infra* ¶¶ 36-38. *House* was previously distinguished in *People v. Ybarra*, 2016 IL App (1st) 142407, ¶ 27, and the majority here concludes that Derrick Thomas's case is more like *Ybarra* than like *House*, because the facts of this case reveal culpable behavior by defendant that is more comparable to the intentional acts of the defendant in *Ybarra* than the accountability conviction of the defendant in *House*. See *supra* ¶ 36. Respectfully, this is not our decision to make, particularly in the first instance. It is the trial court judge, who saw Derrick Thomas and observed his demeanor and

general moral character, as well as his age, who should have the opportunity to determine whether he had a potential for rehabilitation such that something short of a *de facto* life sentence was appropriate. Indeed, in *Ybarra*, the culpability of the defendant was particularly egregious and the trial judge stated on the record that he would have imposed a life sentence even if he had been afforded the discretion to impose a lighter sentence. 2016 IL App (1st) 142407, ¶ 32. In contrast, the trial judge in this case said that he had no discretion and was "unable" to consider rehabilitative potential. It is the fact that we have no idea what the trial court would have done if given discretion and an ability to consider rehabilitative potential for a young adult that makes this case like *House* and different from *Ybarra*.

¶ 71   The majority here makes no attempt to distinguish *Harris* but chooses not to follow it. Other than its disagreement with the court in *Harris* that our supreme court opened the door to this holding in *Thompson*, the majority supports this choice with the suggestion that we should wait for the legislature to revisit the sentencing scheme that left the trial judge in this case with no sentencing option less than the *de facto* life sentence it imposed on Derrick Thomas. *Supra* ¶ 44. We may be waiting for some time. Although our supreme court held in 2002 that the imposition of a mandatory minimum sentence of natural life violated the proportionate penalties clause on a fifteen-year-old defendant (*People v. Miller*, 202 Ill. 2d 328, 336 (2002) (*Leon Miller*)), it was not until 2016, and after the court's holding in that case was joined by numerous others in cases before this court, the United States Supreme Court, and courts in other jurisdictions, that the legislature returned some discretion to trial court judges in the sentencing of juveniles. See Pub. Act 99-69, § 10 (eff. Jan. 1, 2016) (adding 730 ILCS 5/5-4.5-105(c) (eliminating mandatory firearm enhancements and mandatory life sentences for juveniles)).

¶ 72  We certainly could sit back and wait for the legislature to return some degree of discretion in the sentencing of very young adults to the courts. But of course it is the role of the judiciary, and not the legislature, to step in wherever the application of a statute violates the rights afforded by our constitution. See, *e.g.*, *Leon Miller*, 202 Ill. 2d at 336 (noting that the legislature's power to impose a sentence "is not without limitation; the penalty must satisfy constitutional constrictions"). To do so now would not be premature. There is a clear trend, informed by ever-accumulating scientific evidence, in the jurisprudence of this country and this state toward more leniency and sentencing discretion in cases involving young offenders. It is precisely to accommodate trends like this, which reflect the changing values and concerns of our society, that our supreme court has refused to precisely delimit the bounds of what punishments are cruel, degrading, or unconstitutionally disproportionate. See *Leon Miller*, 202 Ill. 2d at 339 (explaining that, "as our society evolves, so too do our concepts of elemental decency and fairness which shape the moral sense of the community"). Although Derrick Thomas committed very serious crimes, under our constitution he is entitled to a sentence based not just on the seriousness of those crimes but one that is arrived at with the objective of restoring him to useful citizenship. A sentence imposed without consideration for his youth or the scientific evidence demonstrating a connection between youth and the potential for rehabilitation cannot meet this standard.

¶ 73  I respectfully dissent.